# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | **Case No. 07-00136-TLM** |
| **B&B AUTOTRANSFUSION** | ) | |
| **SERVICES, INC.,** | ) | **Chapter 7** |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION
_____

## INTRODUCTION

The chapter 7 trustee, Richard Crawforth ("Trustee") seeks allowance of

compensation in conjunction with the Trustee's Final Report, Doc. No. 93

("TFR"), filed on August 31, 2010.[1]  Notice of the TFR was given.  Doc. Nos. 96,

98.  Creditor Michael Jones, individually and as guardian ad litem for R.J. and

M.J. ("Creditors"), timely objected to the application for Trustee's compensation.

Doc. No. 99 ("Objection").

The matter was duly scheduled by Creditors for a September 27, 2010,

_____

[1]  All citations to chapter and section are to the Bankruptcy Code, Title 11, U.S.C.
§§ 101-1532, unless otherwise noted.

MEMORANDUM OF DECISION - 1

hearing.  On that date, Trustee appeared through and with counsel[2] and requested a continuance in order to prepare support for his application and defend against the Objection.  The request was granted even though untimely made.[3]  The issues were heard at an evidentiary hearing held on December 20, 2010.  The issue of allowance of reasonable compensation is here resolved.[4]

Because the matter before the Court is limited to the application for Trustee's compensation, an abbreviated summary of the history and facts of this case will suffice.[5]

## BACKGROUND AND FACTS

This case commenced on January 31, 2007.  The debtor, B&B Autotransfusion Services, Inc. ("Debtor"), scheduled no real property and approximately $66,000 of personal property.  Debtor also scheduled a "[p]otential bad faith lawsuit."  This asset was a claim against Debtor's insurer, Lexington

---

[2]  It was made clear that Trustee's attorney, Jed Manwaring ("Counsel"), who also was an estate professional employed under § 327(a) in this case, was providing personal services to Trustee and would not seek compensation from the estate for such representation.

[3]  *See* LBR 2002.2(f)(4), providing that a written request for a continuance, with an affidavit stating grounds, is to be filed three days prior to the scheduled hearing with notice to opposing parties.  Trustee offered nothing to suggest that the requirements of the Local Rule could not have been met.

[4]  This Decision constitutes the Court's findings of fact and conclusions of law.  Fed. R. Bankr. P. 7052, 9014.

[5]  In addition to considering the evidence presented at the hearing, the Court takes notice of its files and records.  Fed. R. Evid. 201.

MEMORANDUM OF DECISION - 2

Insurance Company ("Lexington"), for that insurer's refusal to settle Creditors'

wrongful death lawsuit against Debtor.  After refusing to settle for $1,000,000, a

subsequent jury verdict was rendered for Creditors against Debtor well in excess

of the proposed settlement amount.  Doc. No. 1 at 10.  Creditors' personal injury

judgment was scheduled in this chapter 7 case as an unsecured claim in the

amount of $3,082,058.95.  *Id.* at 15.

Trustee sought approval of employment of Counsel as an estate

professional under § 327(a) on February 22, 2007.  Doc. No. 20.[6]  Then, on March

8, 2007, Trustee conducted what he characterized as a "lengthy" § 341(a)

meeting.[7]

Following hearings on March 12, 2007, the Court entered an order (a)

allowing Creditors to continue their state court personal injury action in order to

finalize and liquidate to an amount certain their claims against Debtor, and (b)

authorizing Creditors to collect on any such state court judgment from and to the

extent of available insurance coverage, but not from assets of Debtor or from

Lexington based on any "bad faith" claims.  Doc. No. 38.

Trustee then sought approval to employ, under § 327(e) as special counsel,

the attorneys that had represented Debtor in Creditors' pre-bankruptcy litigation.

---

[6]  That application was later approved.  Doc. No. 36.

[7]  Trustee's later filed itemization of services, Ex. F, discussed further below, suggests
that he spent 1.0 hour preparing for, and 1.0 hour conducting, the § 341(a) meeting.

MEMORANDUM OF DECISION - 3

Doc. No. 42.  Such attorneys had been compensated prior to bankruptcy by

Lexington, and Trustee proposed that compensation after bankruptcy be on the

same basis, with no compensation to be paid by the estate.  *Id.*  That application

was granted.  Doc. No. 43.[8]

In October, 2008, Trustee employed an auctioneer to liquidate some of the

tangible personal property of the estate.  Doc. Nos. 52-56 (re: sale of property).[9]

In July, 2009, a motion to approve a compromise was filed under Federal

Rule of Bankruptcy Procedure 9019(a).  Doc. No.61.  In it, Trustee proposed to

settle the "bad faith" claim against Lexington for $1,555,136.00.

That motion explained that a $1,000,000 offer to settle Creditors' case

against Debtor had been made twice by Creditors in mediation in August, 2006,

and that Debtor had demanded its insurer, Lexington, settle for this amount (that

figure evidently representing policy limits).  Lexington failed to do so.  Later,

Lexington offered Creditors $250,000 and, subsequently, $1,000,000, which

Creditors refused to accept.  A jury verdict was thereafter rendered, against Debtor

and others, with Debtor's portion being $3.2 million (adjusted to approximately

---

[8]  Subsequently a different firm was employed under § 327(e) by Trustee as special counsel in connection with Creditors' state court action, its fees also paid by Lexington and not the estate.

[9]  Gross proceeds of $1,717.77 were recovered in this auction, Doc. No. 56, and the auctioneer was allowed compensation of $312.32, Doc. No. 59.  Another small item was proposed to be sold, *see* Doc. No. 70, but later was abandoned.  Trustee proposes no further liquidation of assets, and will abandon whatever tangible assets remain.  TFR at 3-4.

MEMORANDUM OF DECISION - 4

$3.0 million after post-trial motions). In April, 2009, the Idaho Supreme Court upheld the judgment. In May, 2009, Lexington paid $1.8 million to Creditors (policy amount plus interest). This left a substantial portion of Creditors' judgment unpaid.

The compromise of the estate's bad faith claim against Lexington for $1,555,136.00 was the indirect result of a mediation in March, 2009.[10] The compromise in this amount was approved under Federal Rule of Bankruptcy Procedure 9019(a), following notice and without objection. Doc. No. 64. The estate received the $1,555,136.00 on August 11, 2009. TFR at 8.

Counsel was instrumental in evaluating the claims, dealing with other counsel, and negotiating and consummating the compromise, and was later awarded $15,255.70 in § 331 interim compensation, and another $857.17 in § 330 final compensation. *See* Doc. Nos. 66, 74, 88, 91. No further amounts are proposed to be paid to Counsel, or any other professionals, according to the TFR.[11]

Trustee sought compensation for his services in this case in the amount of

---

[10]  Though the mediation session was itself unsuccessful, the parties' subsequent discussions led to a settlement within a few months.

[11]  Trustee also sought approval to employ an accountant, and that request was granted. Doc. Nos. 73, 77. According to the TFR, the accountant is seeking no compensation. Trustee's affidavit explains that, after a lengthy meeting between Trustee, the accountant and Counsel, it was determined that the estate need not file a tax return. Doc. No. 95 at 2.

MEMORANDUM OF DECISION - 5

$70,105.63.  *See* TFR at 2; *see also* Doc. No. 94 ("Application").[12]  The

Application notes that amount is "the maximum amount of compensation

allowable [under § 326(a)] in this case."  *Id.*

Following the Objection and the setting of the continued hearing for

December 20, Trustee filed a "supplement" on December 7, expressing what

appeared to be an offer to Creditors to "compromise" or settle the dispute framed

by the Application and Objection by reducing the requested compensation to

$35,000.00.  Doc. No. 111.  At hearing, Trustee and Counsel made clear that this

was not just an offer, but was intended as an amendment to the Application and

the TFR, and represented an irrevocable reduction in what Trustee requested under

§ 326 and § 330.  As Trustee stated, he thought the $70,105.63 was "fair," but that

$35,000.00 was also a "fair" amount.

The TFR notes that a substantial amount of Creditors' claim remains

outstanding.[13]  The TFR projects that a total distribution of 80.3% of all creditors'

amended claims will be made, assuming the Trustee's $70,105.63 Application is

---

[12]  Copies of the TFR and Application were also admitted at hearing as Exhibits C and D.

[13]  Creditors' January, 2010 request for an interim distribution to all creditors was
granted.  Doc. No. 81.  Pursuant thereto, $1,450,000 was distributed *pro rata* to the unsecured
creditors of record.  The TFR indicates Trustee holds a balance of $94,821.38 to distribute to his
allowed compensation and expenses and on the unpaid portions of all the unsecured creditors'
claims.  The TFR indicates that the outstanding unpaid balance of Creditors' proof of claim alone
is in excess of $367,000.  Thus, even with an adjustment in Trustee's requested compensation,
there will still be unpaid claims.

MEMORANDUM OF DECISION - 6

approved.

Creditors pursued their Objection, and they contested the reasonableness of Trustee's requested compensation, including the reasonableness of the now asserted $35,000.00 amount.[14]  Because Creditors still have a large, outstanding unpaid claim, even after the direct payment by Lexington and the interim distribution by Trustee, they have standing to raise this Objection.

### A.    Evidence regarding Trustee's services

#### 1.    The Affidavit

Trustee filed, in conjunction with the TFR, an "affidavit" dated June 28, 2010, in support of his Application, and the reasonableness of the compensation requested.  Doc. No. 95 ("Affidavit").  This two page narrative of work performed and services rendered lacked an itemization of dates or time spent performing the services and only generally described Trustee's services.[15]

Trustee states in the Affidavit that he reviewed the files and records, and prepared for and conducted a "long and involved" § 341(a) meeting.[16]

---

[14]  Trustee also seeks allowance of expenses in the amount of $1,443.97.  *See* Application at 1-2.  Creditors have raised no objection to the claimed expenses.

[15]  Because this is a factual assertion by Trustee regarding his services, and because it was made before the Objection was filed, its content and details are relevant even though additional evidence was later presented.  Moreover, Trustee introduced a copy of the Affidavit as Exhibit E at hearing.

[16]  As mentioned *supra* at note 7, the preparation for and holding of the meeting and examination took 2.0 hours per Trustee's later itemization, Ex. F.

MEMORANDUM OF DECISION - 7

He also subsequently met with Debtor's principal and obtained keys to the storage facility that contained the business' equipment.  *Id.* at 1.  Trustee's subsequent efforts to liquidate these physical assets met with only limited success.  What was liquidated was sold at auction by Trustee's retained auctioneer.  *Id.* at 2.  One item was subsequently abandoned by Trustee, and he proposes to abandon the balance of the estate's personal property at closing.

Given the significance of the bad faith claim, Trustee immediately employed Counsel.  According to Trustee, Counsel "kept the trustee abreast of developments in the state court action and worked with other counsel to obtain [the] settlement[.]"  *Id.* at 1.  Counsel also then prepared and filed the pleadings to obtain approval of that compromise.  *Id.*

### 2.    Counsel's prior submissions

To obtain detail regarding the Trustee's involvement with his Counsel in these regards, the Court also reviewed Counsel's itemized time records, filed in support of Counsel's § 330 and § 331 applications.  *See* Doc. Nos. 66-1, 88-1.[17]

Those documents reflect Counsel had several telephone conversations with Trustee, met with Trustee several times, and provided e-mails, correspondence and documents to Trustee.  Between 4 and 5 hours of aggregate time are specified in

---

[17]  Trustee expressly supported Counsel's applications and there is, thus, little reason not to consider those itemizations in connection with Trustee's Application.

MEMORANDUM OF DECISION - 8

these entries as directly involving Counsel's interactions with Trustee. It is also reasonable to assume Trustee took time to prepare responses to Counsel's inquiries and to review information provided by Counsel.

Counsel's time entries establish additional facts. In general, Counsel handled all the matters related to the retention of special counsel and the continuation of litigation. Counsel negotiated a tolling agreement on the bad faith claims. Doc. No. 66-1 (entry of 1/16/09). Counsel indicated he attended the unsuccessful mediation, and Trustee was contacted during that session by telephone. *Id.* at 5 (entry of 3/19/09).[18] Negotiations continued and, a little over a month later, Counsel forwarded the $1.5 million settlement offer to Trustee. *Id.* (entry of 4/27/09). Thus, as Trustee's Affidavit suggests, Counsel negotiated and obtained the settlement offer.[19]

Counsel's itemization shows that the hearing on the compromise took half an hour, and the documents were later forwarded to Trustee for signature. Counsel also reviewed proofs of claim, and suggested to Trustee what objections

---

[18]   Trustee's later itemization of services, Ex. F, indicates he attended the mediation on 3/19/09, and asserts 3.5 hours of time were involved. *Id.* at 2. Trustee's testimony was also to the effect that he accompanied Counsel. The reason why Counsel's time entry reads this way is unclear.

[19]   Trustee's itemization, Ex. F, discussed further below, shows no time entry for Trustee between the 3/19/09 mediation and the receipt of the settlement offer on 4/27/09. *Id.* at 2.

MEMORANDUM OF DECISION - 9

might be brought. *Id.* (entry of 6/17/09; 7/10/09).[20]

Some of Trustee's efforts, such as his attempts to liquidate equipment, described above, and investigate Debtor's retirement plan, *see* Affidavit at 2, were apparently done without much involvement of Counsel, insofar as the detail on Counsel's applications reflect.

### 3.    Evidence at hearing

Trustee testified at the hearing on December 20.  Though the testimony's weight and value was somewhat limited by the leading nature of Counsel's questioning, Trustee described the work he performed in the case.

The testimony establishes Trustee performed his regular and ordinary duties in the case with the level of professionalism and skill that the Court, creditors, the United States Trustee and other parties in interest would expect. Indeed, Creditors' Objection does not dispute that point.

The testimony also indicated Trustee was directly involved with Counsel in evaluating the prebankruptcy litigation, the claims the estate had against Lexington, and the resolution of those claims.  This, too, is unexceptional.  While a lay trustee would ordinarily rely heavily on the advice of counsel (and certainly Trustee, who is not a lawyer, here did), it is the trustee who is ultimately

---

[20]   The docket reflects no such objections were ever filed.  However, there were amended claims filed according to the claims register.

MEMORANDUM OF DECISION - 10

responsible for collecting and reducing to cash the property of the bankruptcy

estate, and who is accountable for all property or proceeds received. *See*

§ 704(a)(1), (2).  Trustee and Counsel repeatedly emphasized at hearing the truism

that Trustee was the one with the "final say" on compromise or any other similar

decision dealing with property of the estate.  But it is likewise clear that, here,

Trustee made his decisions in significant part based upon the advice and assistance

he received from Counsel on the complicated factual and legal issues involved in

the case.

Trustee provided at hearing a "timesheet report" that itemized the services

he rendered in the case.  Ex. F ("Trustee's Itemization").  This document bears a

"print date" of October 18, 2010, which was a date after the Objection and after

the first scheduled September, 2010, hearing.[21]

In sum, Trustee's Itemization asserts Trustee spent 52 hours performing

services related to this estate, from February 1, 2007 through September 27, 2010.

*See* Ex. F.

In general, the types of services described appear reasonable and

_____

[21]   Whether the timekeeping was contemporaneously recorded when the services were
rendered, or whether services were later recalled and time entries created after the Objection was
raised was not clear.  If the latter, this Court has, in another context, stated that "reconstruction of
time records, as opposed to keeping contemporaneous records, is inherently prone to error and is
strongly discouraged.  The Court should not be forced to engage in assumption to complete a
record which is the [party's] burden to provide in the first instance."  *See In re Ferguson*, 2001
WL 35814437, at *2 (Bankr. D. Idaho Nov. 29, 2001).

MEMORANDUM OF DECISION - 11

compensable. And, in general, the time assertedly spent seems reasonable, though the descriptions are somewhat terse, and the amount of time allocated may be subject to some "rounding up" to the half-hour or hour.

One matter of concern is the occasional lack of consistency between Trustee's Itemization and Counsel's previously submitted time itemizations, Doc. Nos. 66-1 and 88-1. For example, Trustee's Itemization asserts he had in-person meetings or telephone discussions with his Counsel on 2/17/07; 2/20/07, 4/10/07; 4/18/07; 8/22/07; 10/30/07; 1/29/08; 4/29/08; 12/23/08; 1/16/09; 3/18/09; 6/30/09; 9/28/09; and 12/14/09. These fourteen entries total 9.25 hours.[22] However, there are no corresponding meetings, calls or discussions on these dates found on Counsel's time itemizations.[23] There are other discrepancies as well.[24]

Perhaps an explanation for the discrepancies is the degree of attention or care to the accurate recording of services and time. Perhaps it is due to *post facto*

---

[22] While Counsel identified approximately 5 hours worth of interaction with Trustee, those entries were on other dates.

[23] The first two entries were prior to Counsel's employment application and therefore were likely excluded by Counsel in seeking compensation.

[24] There are instances where Trustee and Counsel ascribe dissimilar duration to the same event. *Compare, e.g.*, Ex. F at 3 (Trustee assertion of 1.0 hour for 1/25/10 court hearing) *with* Doc. 88-1 at 1 (.3 hour for Counsel's associate to attend the same hearing and .2 hour for Counsel to review proposed order and confer with Trustee); *and* Ex. F at 3 (Trustee assertion of .5 hour conference with Counsel on 2/08/10) *with* Doc. No. 88-1 at 1 (Counsel assertion of .2 hour telephone conference that day with Trustee); *and* Ex. F at 3 (Trustee assertion of 1.0 hour conference with Counsel and accountant on 2/09/10) *with* Doc. No. 88-1 at 1 (Counsel assertion of .5 telephone conference with Trustee and a subsequent .5 hour conference that day among Counsel, Trustee and the accountant).

MEMORANDUM OF DECISION - 12

creation of time records rather than contemporaneous record-keeping.  But a

question is raised as to the accuracy of Trustee's overall representations.  It is

perhaps fortuitous that, at bottom, the decision in this case does not directly turn

on such details.

On the foregoing record, the Court turns to the resolution of the Application

and Objection.

## DISCUSSION AND DISPOSITION

The question of the allowance of Trustee compensation under § 326 and

§ 330 was recently addressed by this Court.  *In re Healy*, 2010 WL 3719916

(Bankr. D. Idaho Sept. 16, 2010).

This prior decision of the Court frames the issue and establishes the basis

upon which Trustee's Application is reviewed.  Trustee, however, sharply

criticizes *Healy*.  *See* Doc. No. 107 (brief).  This raises a preliminary issue that

must be addressed.

This Court previously explained in *In re DeBoer*, 99.3 I.B.C.R. 101, 1999

WL 33486710 (Bankr. D. Idaho 1999), that the prior decisions of the judges of this

Court, even though not technically binding, are entitled to respect and deference

for numerous prudential reasons, and advised that the Court will not cast aside its

decisional law without compelling reason.  It further held that the burden is

squarely on those who might disagree with such decisions, and propose a

MEMORANDUM OF DECISION - 13

departure, to support their request with clear and cogent analysis.

In this case, Trustee's briefing, Doc. No. 107, suggests that "*Healy* . . . provides little guidance," and is "limited in its analysis." *Id.* at 8, 9.  It characterizes part of *Healy*'s holding as "dicta." *Id.* at 9.  In short, Trustee suggests that *Healy* ignored § 326(a) and, particularly, § 330(a)(7).  He argues that this Court has "nullified" BAPCPA amendments by adopting, in essence, solely a "lodestar analysis" for trustee's fees post-BAPCPA. *Id.* at 9, 11.

These various statements and contentions are inaccurate, and mischaracterize the holdings in *Healy*.  Trustee's intent appears to be to paint *Healy* as outside the mainstream; this Court's independent review indicates it is not.  Trustee tries to characterize *Healy* as advocating a lodestar analysis as the sole method of evaluating trustee compensation, which a fair reading of the decision also belies.  Trustee's approach was unhelpful to the Court if the intent was to fairly meet the challenge of *DeBoer*.

The Court, in light of *Healy* and also through its independent research and evaluation, clarifies the standard.

Fees for trustees in chapter 7 cases are governed by § 326 and § 330. Section 326(a) states:

> (a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent

MEMORANDUM OF DECISION - 14

on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

It is important to note that § 326(a) authorizes the Court to allow only "reasonable compensation" for a chapter 7 trustee. It is also important to note that § 326(a) incorporates by express reference § 330, providing that the reasonable compensation is allowed "under section 330."

The Court is well aware of the 2005 addition of § 330(a)(7), which provides:

In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326.

*Healy* also recognized that § 330(a)(7) was added in 2005, but observed:

Even so, courts construing that new provision have nearly uniformly held that amounts awarded to the trustee must nonetheless be "reasonable" in the opinion of the bankruptcy court based on the extent and value of the trustee's services rendered in each case. *See, e.g.*, *In re Ward*, 418 B.R. 667, 670-80 (W.D. Pa. 2009) (collecting and discussing cases); 3 Collier on Bankruptcy ¶ 330.02[1][a], 330-8-10 (16th ed.) (noting that courts "have been uniform in holding that [changes made by BAPCPA, including addition of § 330(a)(7)] do not eliminate the court's statutory role in reviewing trustee's compensation for reasonableness.").

*Id.* at *2. The Collier treatise states:

The maximum compensation payable to trustees is set forth in section 326, although that section does not create a statutory entitlement

MEMORANDUM OF DECISION - 15

to the maximum compensation.  Section 330(a)(7) provides that the formulae in section 326 are to be treated as a commission.  That section does not, however, override the separate requirement that the trustee's compensation be reasonable.  Accordingly, courts must consider the reasonableness of the requested compensation, and whether the services and expenses for which reimbursement is sought were "actual" and "necessary" as required by subsections 330(a)(1)(A).

3 Collier on Bankruptcy ¶ 330.02[1] at 330-7 (16th ed. 2010).  It continues:

> The 2005 amendments changed the legal framework in two respects, by excluding chapter 7 trustees from the entities subject to the mandatory application of the factors listed in section 330(a)(3), and by providing that the compensation of a trustee is to be treated as a commission, based on the formulae in section 326(a).  The primary effect of the change should be that, in the majority of cases, a trustee's allowed fee will be presumptively the statutory commission amount.
>
> Nevertheless, labeling the trustee's fee as a commission does not avoid the requirement that the court also determine that the fee is "reasonable," and does not alter the provisions in section 330(a) that limit a trustee to "reasonable" compensation and that permit the court to award less than the amount requested.  Section 330(a)(7) itself specifies that the treatment of a trustee's compensation as a commission is in furtherance of "determining the amount of *reasonable* compensation to be awarded a trustee." (emphasis added).  Moreover, still applicable is the prohibition, set forth in section 330(a)(4), on allowance of compensation for unnecessary duplication of services, and services that were not reasonably likely to benefit the estate or necessary to the administration of the case.  Accordingly, courts will continue both to test the reasonableness of a trustee's fee, and to ensure that there is not compensation for prohibited services.

*Id.* ¶ 330.02[1][a] at 330-9.

Collier notes that "courts that have had occasion to face the issue have been uniform in holding that the changes to section 330 in 2005 do not eliminate the court's statutory role in reviewing a trustee's compensation request for

MEMORANDUM OF DECISION - 16

reasonableness." *Id.* ¶ 330.02[1][a] at 330-10. *Healy* is clearly in the mainstream, and not aberrant as Trustee suggests.

Trustee's disagreement with *Healy* appears to revolve around its analysis of the services the trustee there rendered and the time devoted to the rendering of those services. Indeed, there is discussion of that factor. However, the Court does not agree with Trustee that this is an improper application of § 330(a)(3)(A) and (B) standards to trustees despite the absence of chapter 7 trustees from the introductory language of § 330(a)(3).[25] Instead, *Healy* articulates a practical and appropriate approach in order to allow the Court to perform the duty imposed by the Code. Knowing what a trustee *did* in a case – that is to say an itemization of the services rendered – is essential. Without that information, the Court cannot perform its required role under § 326(a) (*i.e.*, determining "reasonableness"), § 330(a)(1)(A) (*i.e.*, determining "reasonable compensation for the *actual*, necessary services rendered by the trustee"), and § 330(a)(4) (*i.e.*, determining if there was unnecessary duplication of services or services rendered that were not

_____

[25] *Healy* does twice refer to § 330(a)(3). *See id.* at *2. If meant to suggest direct application of the section, it would appear to be an error. The BAPCPA change to § 330(a)(3) that specified only certain parties (examiner, chapter 11 trustee and professional persons) as subject to § 330(a)(3), effectively excluded chapter 7 trustees. *Accord* Collier at ¶330.02[1][a], quoted *supra*. That does not negate *Healy*'s value. As the Court today takes pains to show, many of the factors encompassed by § 330(a)(3) are inherently required in order to evaluate "reasonableness" under § 326(a), § 330(a)(1), § 330(a)(4), and § 330(a)(6). *See also In re Clemens*, 349 B.R. 725, 730 n.20 (Bankr. D. Utah 2006) (noting that the still required factors under § 330(a)(1) "conceptually overlap" with those now inapplicable to chapter 7 trustees under § 330(a)(3)). And there is a certain amount of similarity between, for example, § 330(a)(3)(C) that is now inapplicable and § 330(a)(4)(A) that still applies. The Court today takes guidance from *Healy* without suggesting § 330(a)(3) applies *per se* to chapter 7 trustee compensation.

MEMORANDUM OF DECISION - 17

reasonably likely to benefit the estate or necessary to administration).

Clearly the Court must have facts provided, such as itemizations of services rendered and an explanation of the time spent in rendering those services, upon which the required analysis can then be made.[26]  Collier, again, notes the approach courts have almost uniformly taken:

> [M]ost of these courts have held that it will continue to be necessary for trustees to present detailed fee applications, including a schedule of the number of hours spent, daily time records supporting the time spent and a narrative of the trustee's role and accomplishments supporting the compensation award.

*Id.* ¶ 330.02[1][a] at 330-10.  Finally, it is noted that Trustee has not suggested any alternative approach that would comport with the applicable Code provisions.

---

[26]  Trustee argued at hearing that there was no requirement to keep or provide an itemization of services rendered and time spent.  That is not an approach endorsed by the case law.  *See, e.g.*, *Clemens*, 349 B.R. at 733.  As noted, such an approach would leave a bare and unworkable record upon which the other applicable standards of § 330(a) and § 326(a) are to be applied.  Trustee's argument also ignores the Handbook for Chapter 7 Trustees, issued by the Executive Office of the United States Trustee, which notes at page 8-29:

> A court may award a trustee less than the statutory maximum based upon the considerations in § 330, but may not exceed the compensation ceiling in § 326(a).  The trustee also receives a portion of the filing fee when administration of the case is complete.  *The trustee should keep time records in every asset case as evidence of the services performed*.  However, local rules and practices sometimes provide that time records need not be submitted if the compensation request is under a specified amount.

*See* http://www.justice.gov/ust/eo/private_trustee/library/chapter07/docs/ch7_handbook/ ch7_handbook_pii_2010.pdf (last visited Jan. 18, 2011) (emphasis added).

This Court has not required an itemization to be filed by a chapter 7 trustee in each and every case.  But, particularly in cases such as this, where creditors have filed an objection to trustee's compensation, or in cases where the Court asks for further submissions or sets a hearing in order to address proposed trustee compensation, there would be ample reason for a trustee to provide accurate, contemporaneously kept time records itemizing the services rendered.

MEMORANDUM OF DECISION - 18

Addressing these several points is important, but preliminary. The Court is now left with the challenge of determining "reasonable compensation" in this specific case. Other than being dismissive of *Healy*'s attempt to provide guidance, and arguing that both $70,105.63 and $35,000.00 are "fair" amounts, Trustee provides little assistance in that undertaking.[27]

The court in *In re McKinney*, 383 B.R. 490 (Bankr. N.D. Cal. 2008), after surveying case law and treatise authority, developed a methodology "for determining reasonableness 'with an eye on the statutory cap.'" It treated that cap as presumptively reasonable, and, thus:

> If the court, after reviewing time records and all other relevant facts and circumstances, determines that the statutory maximum is not substantially disproportionate to the value of the services required from the trustee, the court should award the statutory maximum. If, after such review, the court determines that the statutory maximum is substantially disproportionate to the value of the trustee's services, the court should award as a "reasonable commission" the maximum amount that is not substantially disproportionate to the value of the

---

[27] In passing, the Court will comment on one other argument made by Trustee. He suggested that the allowance of maximum commission-based compensation was critical to his ability to make a living and remain serving as a trustee, given the high number of "no-asset" chapter 7 cases that he has to administer. First, this argument was substantially negated by Trustee's forced admission, on cross-examination by Creditors, of his annual income as a chapter 7 trustee. Second, as one court commented:

> The Chapter 7 Panel Trustees . . . are outstanding and carry out their duties expertly, professionally, and efficiently. In too many cases they are not adequately compensated for their services. The creditors in a case where significant sums are collected through unexceptional efforts by the trustee should not, however, have their distributions reduced to make up for inadequate trustee compensation in previous cases.

*In re Mack Props., Inc.*, 381 B.R. 793, 799 (Bankr. M.D. Fla. 2007).

MEMORANDUM OF DECISION - 19

trustee's services to the estate.

*Id.* at 494.[28]  In order to bring rigor to the exercise of the Court's discretion,[29]

*McKinney* identified several factors that could be considered:

    (1) the amount of compensation based on the § 326(a) statutory maximum;

    (2) the functions performed by the trustee;

    (3) the results achieved and the quality of services performed;

    (4) the risk of nonpayment;

    (5) the involvement or assistance of other professionals; and

    (6) the time expended.

*Id.* at 494-96.

    In evaluating the second factor, the court noted that the trustee in *McKinney* administered funds derived from a single, unconcealed, easily liquidated asset, and that the debtor brought the buyer of the asset to the trustee.  The court also noted that there were but a few unsecured claims, and no claim litigation.  In connection with the third factor, the court noted the services of the trustee were generally excellent, except in connection with the fee application process and the failure to

---

[28]  The court "acknowledg[ed] that a reasonable commission can substantially exceed a Lodestar-based fee[.]"  *Id.* at 496.

[29]  That Trustee's compensation can be reduced, *see* § 330(a)(2), and the multiple statutory directives to find "reasonableness," suggest the matter is ultimately committed to the Court's informed discretion.  Case law is consistent.  *See, e.g.*, *In re C&D Dock Works, Inc.*, 437 B.R. 443, 446 (Bankr. M.D. Fla. 2010) ("A Bankruptcy Court has 'substantial discretion' in making a reasonableness determination.") (quoting *Ward*, 418 B.R. at 678).  *In re Phillips*, 392 B.R. 378, 390 (Bankr. N.D. Ill. 2008) ("[T]he court is vested with some discretion to be judiciously and fairly exercised.").

MEMORANDUM OF DECISION - 20

provide, at the outset, an itemization of time expended.  The court noted, in regard to the fourth factor, no real risk of nonpayment and, in regard to the fifth factor, that the trustee received "substantial assistance" from counsel, who was separately and fully compensated.  In connection with the sixth factor, the time expended, the court was reluctant to credit after-the-fact reconstructions and estimates of time, nor to give any credit for certain of trustee's arguments about the lack of need to provide time records.  *Id.*

There are certainly parallels with the instant case.  The primary asset here was not concealed.  Trustee had the able assistance of Counsel in dealing with this asset, from virtually the very start of the case.  From the weight of the evidence, Counsel took the laboring oar in dealing with all aspects of the litigation claims.  The time detail provided by Counsel and by Trustee indicates Counsel directed and orchestrated the analysis and evaluation of the claims, the efforts at mediation, and the ultimate settlement of the bad faith claim.  While Trustee was involved, as he clearly must be, the record supports the conclusion that Trustee relied on the skill and experience of, and the evaluation and pursuit of the claim by, his attorneys.  Even Trustee's own Affidavit indicates that his counsel "kept [him] abreast of developments" and "worked with other counsel to obtain a settlement" which Trustee then approved.  Counsel appeared and advocated Court approval of that settlement under applicable precedent; though Trustee appeared at the Rule 9019(a) hearing, his role at the hearing was subsidiary to Counsel's.

MEMORANDUM OF DECISION - 21

The other work Trustee performed was typical of that in chapter 7 cases generally. Most of the work was performed, to all appearances, professionally and ably.[30] However, it was not exceptionally difficult or unusual work. The case was unique only in that the primary asset, the bad faith litigation claim, was quite large and, at filing, unadjudicated. Many services described in the Affidavit and in Ex. F are common to all cases, and did not require extensive time. Trustee utilized an auctioneer to liquidate some minimal personal property. He proposes to abandon all other items of property. There are few claims, and no claim litigation.

Fundamentally, this case presents a situation where a very large asset was disclosed, realized upon and reduced to cash, and is now ready for final distribution to creditors. Trustee's services, though competent, were limited, and his professionals were fully compensated. The maximum § 326(a) commission is therefore quite high in relation to the services performed.[31] Even the "adjusted" $35,000.00 suggested commission is high. The problem presented has been summarized this way:

> [T]here may be cases where the amount of "moneys disbursed" by the trustee may be very high in relation to the services performed, presenting a risk that a trustee may be overcompensated by applying the [§ 362(a)] commission percentage. Chapter 7 cases filed with a

---

[30] The primary exception here, as in *McKinney*, was in regard to the compensation request itself.

[31] As stated in *McKinney*: "This is simply one of those cases in which Trustee received a relatively liquid asset, the case involved little other administration, and the statutory cap bears little relation to the services required." 383 B.R. at 496.

MEMORANDUM OF DECISION - 22

significant amount of money in existing bank accounts, or cases where
the trustee has operated the business for a period of time, or other cases
where there are significant disbursements without a proportionate effort
by the trustee, are examples of cases where the commission fee may
not be reasonable.  In such cases, even if all the services were properly
performed, courts will need to assess whether the implied hourly rate
is so high as to render the fee not reasonable.

Collier, ¶ 330.02[1][a], at 330-9 to 330-10.[32]

## CONCLUSION

Trustee bore the burden under § 326 and § 330 to show the reasonableness

of the requested compensation of $35,000.  Under the entire record in this case,

that burden was not met, and the Court concludes that $35,000 is substantially

disproportionate to the value of the services required and provided.  The Court, in

the exercise of its informed discretion, and under all the factors above identified,

determines that $16,000 is a reasonable commission.  *See* § 326(a)(1); § 330(a)(1),

§ 330(a)(2).

The Objection will therefore be sustained, in part, and the Application will

be granted, in part, and compensation allowed Trustee in the amount of

---

[32] In *McKinney*, the court noted an "implied hourly rate" for that trustee of $1,025 to
$1,600 depending on whether it was calculated from the contemporaneous time records or the
trustee's higher, but less reliable, estimate of time expended.  In the present case, the $70,000
commission Trustee views as "fair" would result in an implied rate of $1,346 per hour (accepting
for these purposes the 52 hour figure shown on Ex. F rather than a lower total time as arguably
shown by the evidence), and a commission of $35,000 would equate to an implied hourly rate of
$673 per hour.  Even the latter is over 3.5 times the highest hourly rate charged by Trustee's
Counsel.  Though this would, in Collier's terms, suggest "the implied hourly rate is so high as to
render the fee not reasonable," it provides little help in determining what would be reasonable.
Frankly, other than in signaling a potential problem, the Court views the "implied rate" exercise
as providing limited analytical value to the challenge of determining what is a reasonable
commission.

MEMORANDUM OF DECISION - 23

$16,000.00.  The expenses of $1,443.97 will also be allowed.  An Order will be

entered by the Court.

DATED:  January 18, 2011

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE